**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER L. GETZ, ) | |
| ) | CASE NO. 1:13-cv-00918 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Jennifer L. Getz ("Getz") challenges the final decision of the Acting Commissioner of Social Security, Carolyn Colvin ("Commissioner"), denying her Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On March 21, 2011, Getz filed an application for SSI alleging a disability onset date of

February 1, 2001.[1]  (Tr. 44.)  Her application was denied both initially and upon reconsideration.  Getz timely requested an administrative hearing.

On March 26, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Getz, represented by counsel, an impartial vocational expert ("VE"), and an impartial medical expert ("ME") testified.  (Tr. 44.)  On July 10, 2012, the ALJ found Getz was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 53.)  The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

Age thirty-three (33) at the time of her administrative hearing, Getz is a "younger" person under social security regulations.  *See* 20 C.F.R. § 416.963(c).  She has a high school education and no past relevant work.  (Tr. 52-53.)

## III.  Standard for Disability

A disabled claimant may be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

---

[1] At the hearing, the alleged onset date was amended to March 21, 2011.  (Tr. 44.)

impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Getz established medically determinable, severe impairments, due to bipolar disorder, personality disorder, and right knee pain; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 46.) Getz was found not to have any past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 48, 53.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Getz was not disabled. (Tr. 53.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been

defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence

4

in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

### *Migraines as a "Severe" Impairment*

Getz argues the ALJ erred by finding that her migraine headaches did not constitute a "severe" impairment and by his subsequent failure to incorporate appropriate limitations resulting from her migraines. (ECF No. 17 at 9-11.)

The Commissioner argues the ALJ's non-severity finding at Step Two, as well as the remainder of the sequential evaluation process, is supported by substantial evidence. (ECF No. 18 at 16-19.) Further, the Commissioner argues that the ALJ considered Getz's headaches during subsequent steps of the disability analysis, but additional limitations beyond those contained in the RFC were not warranted. *Id*.

At step two of the disability analysis, the ALJ must determine whether the claimant has a severe impairment. *See* 20 C.F.R. § 416.920(a)(4)(ii). To determine if a claimant has a severe impairment, the ALJ must find that an impairment, or combination of impairments, significantly limits the claimant's physical or mental ability to do "basic work activities." *See* 20 C.F.R. §

416.920(c). "An impairment ... is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," and include: (1) physical functions such as standing, sitting, lifting, handling, etc.; (2) the ability to see, hear and speak; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and, (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

The Sixth Circuit construes the Step Two severity regulation as a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). *See also Anthony v. Astrue*, 2008 WL 508008 at * 5 (6th Cir. Feb. 22, 2008). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." SSR 96–3p, 1996 WL 374181 at *1. After the ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96–8p, 1996 WL 374184, at *5. When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Nejat v. Comm'r of Soc. Sec.*, 2009 WL 4981686 at * 2 (6th Cir. 2009); *Anthony v. Astrue*, 2008 WL 508008 at * 5 (6th Cir. Feb. 22, 2008).

Here, at Step Two, the ALJ did not include migraine headaches among Getz's "severe"

impairments. (Tr. 46.) With respect to the migraine headaches, the ALJ observed that Getz alleged she suffered from migraine headaches "a couple of times a week and they last for hours or days." (Tr. 48.) The ALJ further explained as follows:

> [Getz] complained of recurrent headaches, but an MRI of the brain in July 2010 was normal [Exhibit 6F]. Although the record does show that she was treated by a neurologist for migraines, there is also evidence that she did not comply with prescribed medications and that her headaches were related to situational stress [Exhibit 13F].

(Tr. 50-51.)

While Getz asserts that the RFC failed to address the diagnosis of migraine headaches, she does not argue that it insufficiently accommodated any particular limitations resulting from her migraines. The ALJ incorporated a number of non-exertional limitations into the RFC assessment, including prohibitions against complex tasks, high production-quotas or piecework, or work involving arbitration, confrontation, negotiation, or supervision of others. (Tr. 48.) Getz was limited to simple, routine, and low-stress work requiring only superficial interaction with co-workers, supervisors, and the general public. *Id.* In her argument, Getz does not direct this Court's attention to any evidence, medical or otherwise, suggesting she has any greater limitations relating to her migraines than those identified by the ALJ above and incorporated into the RFC.[2] Although Getz points to the VE's testimony that more than one absence per month would not be tolerated in a work setting, Getz offers no evidence that her migraines would cause

---

[2] Even in the medical evidence section of her brief, Getz fails to direct this Court's attention to any evidence indicating her treating physician, Dr. David Ryan, assessed any particular restrictions related to her migraines. (ECF No. 17 at 7-8.)

7

absences in excess of one per month.[2]

At Step Five, the ALJ presented a hypothetical question to the VE which included the limitations set forth in the RFC referenced above. The VE identified a number of jobs that such an individual could perform in the national, state, and local economies. (Tr. 32-35.)

Accordingly, because the ALJ considered Getz's migraines in the remaining steps of the sequential analysis, failing to find that her migraine headaches constituted a severe impairment does not rise to the level of reversible error. *See Maziarz*, 837 F.2d at 244 ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error"); *Anthony*, 2008 WL 508008 at * 5 (because the ALJ considered claimant's severe and nonsevere impairments at the remaining steps of the sequential analysis, "[t]he fact that some of Anthony's impairments were not deemed to be severe at step two is therefore legally irrelevant").

In connection with her first assignment of error, Getz also argues that if the ALJ could not determine what effects her migraines had on her functional abilities, he should have recontacted her medical providers in accordance with 20 C.F.R. §§ 416.912(e) & 416.927 based on the decision in *Price v. Comm'r of Soc. Sec.*, No. 09-10130, 2010 WL 199908 (E.D. Mich. jan. 19,

---

[2] While Getz herself testified that she suffers multiple migraines a week, she does not point to any evidence suggesting that she would be unable to work while suffering a migraine. Moreover, to the extent Getz's testimony supports the notion that she would miss more than one day of work per month due to migraines, credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Getz has not challenged the propriety of the ALJ's credibility determination.

2010). (ECF No. 17 at 11.) In the *Price* decision, the Appeals Council found that the ALJ did not "accurately address the medical opinion expressed by the claimant's treating psychologist," "nor did it indicate the weight given to such opinion evidence." *Price*, 2010 WL 199908 at *2 (quoting the Appeals Council's Order of Remand). Therefore, the Appeals Council remanded the matter back to the ALJ, in accordance with 20 C.F.R. 416.912(e) and 416.927, indicating that the claimant's treating psychologist should be re-contacted for further clarification of his opinion and/or to obtain additional medical records regarding the claimant's mental status. *Id*. Before the District Court, the claimant argued that the ALJ erred by not complying with the Order of Remand because a consultative mental status evaluation was not ordered. *Id*. at *7. The *Price* court found that 20 C.F.R. § 416.912(e) "only requires the ALJ to seek additional information when the evidence is otherwise inadequate. Since the ALJ did not find the information inadequate, the ALJ was under no obligation to seek additional information." *Id*. at *7 (*citing DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. App'x 411, 416 (6th Cir. 2006); *Jackson v. Barnhart*, 368 F.Supp.2d 504, 507, n. 1 (D.S.C. 2005); *Phelps v. Astrue*, No. 08–123–GFVT, 2009 WL 2778212, at *2 (E.D.Ky., Sept.1, 2009)). The *Price* decision also noted that 20 C.F.R. § 416.927, which addresses the evaluation of opinion evidence, was not directly pertinent since the ALJ did not discount any medical opinion evidence. *Id*. at *7, n. 4. Here too, 20 C.F.R. § 416.927 is not pertinent, as Getz has not argued that the ALJ improperly weighed the medical opinions of record.

Moreover, as pointed out by the Commissioner, regulations 20 C.F.R. § § 404.1512 and 416.912 were amended and the former paragraph (e), which imposed on ALJs a duty to recontact a disability claimant's treating physician under certain circumstances, was removed. *Trappier v.*

9

*Astrue*, No. 11-2494, 2012 WL 6025767, n. 3 (D.S.C. Sept. 28, 2012). This change became effective on March 26, 2012 – the same date Getz's hearing was held and several months before the ALJ issued his decision. *Id.*; *Wheeler v. Astrue*, 2013 WL 1819774 at n. 6 (W.D. Pa. Apr. 29, 2013) ("The SSA eliminated [§ 416.912(e)(1)] and § 404.1512(e)(1), effective March 26, 2012.... The new protocol for recontacting medical sources is set forth in 20 C.F.R. §§ 404.1520b, 416.920b.");[3] *Hammonds v. Comm'r of Soc. Sec.*, 2013 WL 5308713 at *7 (N.D. Ohio Sept. 19, 2013); *see also How We Collect and Consider Evidence of Disability*, 77 Fed. Reg. 10651–01 (Feb. 23, 2012).

As the ALJ did not violate any legal or procedural standard or regulation, Getz's first assignment of error is without merit.

***Consultative Examination***

Getz also asserts that the ALJ abused his discretion in failing to order a consultative examination. (ECF No. 17 at 11-13.)

Getz, however, cites no rule or regulation that *requires* an ALJ to order such a review. In fact, 20 C.F.R. § 416.912(e)[4] provides discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony. *See also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."). In her brief, Getz

---

[3] The new provision indicates that the Social Security Administration Commissioner *may* recontact a treating physician but may also choose not to do so.

[4] This subsection was formerly located at § 416.912(f) prior to the elimination of the previous subsection (e) as discussed above.

10

quotes the following unidentified passages from the regulations:

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical sources;
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work, or, if you are a child, your functioning, but the current severity of your impairment is not established.

These provisions come from 20 C.F.R. § 416.919a(b), although the fourth paragraph was removed effective March 26, 2012. (ECF No. 17 at 12.) Getz's brief suggests that an examination must be ordered if any of the scenarios apply. Getz, however, omits crucial language which identifies these situations where an ALJ "may" purchase a consultative examination. 20 C.F.R. § 416.919a(b). The regulations identify the above situations as "examples of when we *might* purchase a consultative examination ..." *Id*. (emphasis added). "[A]n ALJ is not required to refer a claimant for a consultative examination unless the record establishes that such an examination 'is necessary to enable the administrative law judge to make the disability decision.'" *Williams v. Astrue*, 1:11-CV-2569, 2012 WL 3586962 (N.D. Ohio Aug. 20, 2012). "The plain language of the statute clearly places the decision to order a consultative examination within the discretion of the ALJ." *Evans v. Astrue*, 3:10-CV-67, 2010 WL 5488525 (E.D. Tenn. Nov. 22, 2010), report and recommendation adopted, 3:10-CV-67, 2011 WL 13453

11

(E.D. Tenn. Jan. 4, 2011); *see also Lucas v. Comm'r of Soc. Sec.*, 1:11 CV 2497, 2013 WL 1150019 (N.D. Ohio Mar. 19, 2013) ("Ordering a consultive exam lies in the discretion of the ALJ."); *Cyrus v. Astrue*, 1:11-CV-234, 2012 WL 2601495 (S.D. Ohio July 5, 2012) ("Whether or not to order a consultative examination is a discretionary decision made by an ALJ upon a finding that the record is not sufficiently developed to evaluate a claim."), report and recommendation adopted, 1:11CV234, 2012 WL 3113224 (S.D. Ohio July 31, 2012); *Lockett v. Comm'r of Soc. Sec.*, 11-13709, 2012 WL 3759037 (E.D. Mich. Aug. 1, 2012) ("The determination to order a consultative examination or diagnostic testing is entirely discretionary..."), report and recommendation adopted, 11-13709, 2012 WL 3731772 (E.D. Mich. Aug. 29, 2012).

During the hearing, Getz suggested that a consultative orthopedic examination might be needed in light of the ME's testimony. (Tr. 26.) The ALJ declined noting the existence of no less than four MRIs within the previous two years. (Tr. 26-27.) The ALJ determined that the record was sufficiently developed to evaluate Getz's claim. Getz has not clearly demonstrated that the ALJ's determination was an abuse of discretion. As such, the ALJ did not commit error by declining to order a consultative examination.

Getz's second assignment of error is without merit.

*Hypothetical Question*

In her final assignment of error, Getz asserts that the ALJ erred by failing to incorporate all appropriate restrictions into the hypothetical question posed to the VE. (ECF No. 13-15.)

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health &*

*Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

Getz asserts that the ALJ failed to incorporate the findings of consultative psychologist Deborah A. Koricke, Ph. D., into the hypothetical question. Dr. Koricke opined that Getz had a Global Assessment of Functioning ("GAF") score of 60, which places her at the high end of the moderate range (*i.e.* closer to mild than to severe.)[5] (Tr. 692.) Dr. Koricke further opined that Getz had "demonstrated some difficulty with attention and concentration ... secondary to her depression and anxiety." *Id*. The ALJ's first hypothetical included the following non-exertional limitations:

> [T]his [hypothetical] person should do no complex task but can do simple and routine tasks; they should be low-stressed, no high production quotas, no pace

---

[5] The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Association, 4th ed revised, 2000) ("DSM-IV"). A GAF score between 51 - 60 denotes "moderate symptoms." DSM-IV at 34. A GAF score between 61 -70 indicates "mild symptoms." *Id*. It bears noting that a recent update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Association, 5th ed., 2013).

> rate work; no work involving arbitration, negotiation, or confrontation; only superficial interpersonal interactions with the public, coworkers, and supervisors, this is not to exclude contact but it should be for a short duration and specified purpose; this person should do no supervision of anybody ....

(Tr. 32.) The second hypothetical kept the same non-exertional impairments. (Tr. 33-34.)

Getz asserts that these non-exertional limitations did not adequately account for her limitations as they relate to her ability to maintain concentration and persistence. (ECF No. 17 at 14-15.) Getz cites *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010) in support of her argument. In *Ealy*, the ALJ, despite concluding that the claimant had moderate difficulties with regard to concentration, persistence *and* pace, completely omitted any speed or pace-based restrictions. *Id*. at 516. The *Ealy* court found that the limitation to "simple" and "repetitive" work did not adequately convey the need for *pace-based* restrictions. *Id*. Furthermore, as specifically noted in a recent decision by another Court of this District, "*Ealy* does not require further limitations in addition to limiting a claimant to simple, repetitive tasks for every individual found to have moderate difficulties in concentration, persistence, or pace." *Saturday v. Comm'r of Soc. Sec*., 2013 U.S. Dist. LEXIS 180709 (N.D. Ohio Dec. 27, 2013) (internal quotations omitted) (*citing Jackson v. Comm'r of Soc. Sec.*, No. 1:10-CV-763, 2011 U.S. Dist. LEXIS 120476, 2011 WL 4943966, at *4 (N.D. Ohio Oct.18, 2011) ("*Ealy* stands for a limited, fact-based ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions.")

Here, Getz has not alleged that the hypothetical was inadequate with respect to pace, but only as to concentration and persistence. Getz, however, failed to demonstrate that the limitations included in the hypothetical were inaccurate and failed to account for moderate limitations in concentration and persistence. As such, her third assignment of error is without

merit.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: January 15, 2014.